NO. 07-04-0487-CR


 07-04-0504-CR


IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



MARCH 16, 2006


 ______________________________



DARRELL WAYNE MORRIS A/K/A B.C. MORRIS, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;



NO. 48,747-E; HONORABLE ABE LOPEZ, JUDGE


_______________________________




Before QUINN, C.J., and REAVIS and HANCOCK, JJ.

OPINION


 Appellant, Darrell Wayne Morris, appeals his conviction for possession of a
controlled substance (cocaine), in an amount of at least four grams but not over 200 grams,
and the adjudication of his guilt for the offense of aggravated assault with a deadly weapon. 
Appellant further appeals the sentences of 12 years incarceration imposed for each
conviction. We affirm.


Background

 Based on a plea agreement, appellant pled guilty to a charge of aggravated assault
in 1999. In accordance with the State's recommendation, adjudication was deferred for
eight years. 

 On November 5, 2003, Officer Ponce of the Amarillo Police Department received
information from a confidential informant that narcotics were being sold at a car wash
owned by appellant. Another officer, Perez, had conducted surveillance on the car wash
for the preceding two weeks and had observed activities that he concluded were consistent
with drug transactions. Acting on this information, Ponce performed a surveillance of the
car wash to confirm that drug transactions were occurring there. During Ponce's 15 minute
"spot up," Ponce saw three vehicles pull into the car wash. None of these vehicles were
washed. Each of these three vehicles were approached by a person who would briefly
converse with the occupant, then he would go back to a "shed" area and would then return
to the car. According to Ponce, these exchanges would last no more than two minutes. 
Ponce did not see drugs being sold, money exchanging hands, or weapons present, but
he concluded that these three exchanges were, based on his training and experience,
consistent with drug transactions. He also felt that his observations were sufficient to
corroborate the information he had previously received from the confidential informant and
the conclusion reached by Perez.

 As a result, Ponce gave other officers the signal to perform a "jump out" at the car
wash. As described by Ponce, a "jump out" is when officers pull into the parking lot, jump
out of an unmarked van, secure everybody present by ordering them to get down on the
ground, followed by a pat down search of those present. After those present are secured,
the "jump out" officers question those detained about the possible sale of drugs at the
location. 

 Officer Russell was specifically assigned the task of securing appellant during the
"jump out." Russell was to make sure that appellant did not have a weapon and that he did
not destroy or discard any evidence. When the "jump out" was executed, appellant
complied with the officers' requests to get on the ground, but appellant tried to scoot under
a nearby parked vehicle. Concerned that appellant was either trying to find a weapon or
hide a weapon or evidence, Russell pulled appellant from under the car and handcuffed
him. When Russell looked under the vehicle, he found a Skoal can. Within the can,
Russell found plastic bags that appeared to contain crack cocaine. After making this
discovery, Russell arrested appellant. Appellant was then searched incident to the arrest
and $859 in cash was found on appellant.

 Following appellant's arrest, he was indicted for possession of a controlled
substance and the State filed a motion to proceed to adjudication on the aggravated
assault charge alleging that he violated the terms of his community supervision based on
his possession of a controlled substance. 

 Before the trials, appellant filed motions to suppress any evidence seized by officers
during the "jump out" contending that the officers lacked reasonable suspicion to conduct
a warrantless search and that any evidence obtained as a result of the detention and arrest
was the "fruit of the poisonous tree." After holding a pre-trial hearing, the trial court
continued its ruling. While the trial court never entered a formal ruling on appellant's
motions, at the adjudication hearing, the trial court allowed evidence obtained during the
"jump out" to be admitted over appellant's objections. The trial court found that appellant
violated the terms of his community supervision by possessing a controlled substance,
adjudicated appellant guilty for the aggravated assault, and sentenced appellant to 12
years incarceration.

 Following the trial court's adjudication on the aggravated assault charge, appellant
pled guilty to the possession charge subject to his right to appeal the denial of his
suppression motion. The trial court accepted appellant's plea, found him guilty of the
possession charge, and sentenced appellant to 12 years incarceration.

 By two issues, appellant contends that the trial court erred in denying appellant's
motions to suppress the cocaine because the police acted in violation of the Fourth
Amendment of the United States Constitution and Article One, Section Nine of the Texas
Constitution. (1) We will address appellant's issues in the context of each conviction
separately.



Aggravated Assault

 Appellant contends that, since the State's sole allegation in its motion to proceed to
adjudication was the possession charge, the suppression of the cocaine would preclude
the trial court's adjudication of appellant's guilt for the aggravated assault. However, we
have no authority to review the trial court's determination to proceed to an adjudication of
guilt. See Tex. Code Crim. Proc. Ann. art. 42.12, § 5(b) (Vernon Supp. 2005); Holder v.
State, 618 S.W.2d 80, 81 (Tex.Crim.App. 1981) (appellate court has no authority to
address whether evidence was obtained as a result of an illegal search or seizure, as this
issue goes to the trial court's determination of whether to proceed to adjudication). Thus,
we affirm the aggravated assault conviction.

Possession of a Controlled Substance

 Appellant pled guilty to the possession of a controlled substance charge subject to
his right to appeal the denial of his motion to suppress the cocaine. Appellant contends
that he was illegally arrested during the "jump out" and that the cocaine should be
suppressed as the "fruit of the poisonous tree." We conclude that, when the events
involving appellant are viewed in chronological sequence, appellant was not illegally
arrested.

 We review a trial court's ruling on a motion to suppress by giving almost total
deference to a trial court's determination of historical facts, while reviewing the court's
application of the law to those facts de novo. See O'Hara v. State, 27 S.W.3d 548, 550
(Tex.Crim.App. 2000). When the trial court does not make explicit findings of historical
facts, we review the evidence in the light most favorable to the trial court's ruling. Id.

 Prior to the "jump out," Officer Perez had confirmed that activities consistent with
drug transactions had occurred at the car wash during the two weeks preceding the raid,
a reliable informant had informed the officers that drug transactions had occurred at the car
wash on the day of the raid, and Officer Ponce was able to confirm that activities consistent
with the sale of drugs were occurring at the car wash during the 15 minutes before the raid. 
Police may stop and briefly detain persons reasonably suspected of criminal activity, even
if probable cause to arrest is not then present. See Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct.
1868, 20 L.Ed.2d 889 (1968). The reasonableness of the detention must be examined in
terms of the totality of the circumstances and is justified when the detaining officers have
specific articulable facts leading to a reasonable conclusion that the person to be detained
is, has been, or soon will be engaged in illegal activity. Woods v. State, 956 S.W.2d 33,
38 (Tex.Crim.App. 1997). Considering the facts known to the officers, we conclude that
they were justified in detaining appellant.

 Appellant contends that, when the officers jumped out of the unmarked van in "raid
gear" with guns drawn and ordered everybody present to get down on the ground, he was
under arrest. However, it cannot be said that whenever police draw weapons on a person
that the resulting seizure must be an arrest rather than an investigatory detention. See
Rhodes, 945 S.W.2d at 117. Similarly, ordering a suspect to the ground does not
necessarily convert an investigatory detention into an arrest. See Nargi v. State, 895
S.W.2d 820, 822 (Tex.App.-Houston [14th Dist.] 1995), pet. dism'd, improvidently granted,
922 S.W.2d 180 (Tex.Crim.App. 1996). To effectuate a detention, police may use such
force as is reasonably necessary to allow for investigation, to maintain the status quo, or
for officer safety. Rhodes, 945 S.W.2d at 117. 

 A police officer's belief that a suspect is armed may be predicated on the nature of
the suspected criminal activity. See Terry, 392 U.S. at 27-28. Because weapons are
closely associated with drug dealing, a reasonable suspicion that a suspect is dealing drugs
supports a reasonable inference that the suspect is armed. See Carmouche v. State, 10
S.W.3d 323, 330 (Tex.Crim.App. 2000). All of the officers testified that they ordered those
present at the car wash to the ground out of concern for officer safety. While there were
no weapons ultimately discovered, we conclude that the totality of the circumstances
justified the police actions as reasonably necessary to protect the officers.

 Immediately following the "jump out," appellant complied with the officers' requests
to get down on the ground. However, appellant then attempted to crawl or scoot under a
nearby vehicle. A seizure occurs only when (1) a reasonable person would believe he is
not free to leave and (2) when that person has yielded to the officer's show of authority or
has been physically forced to yield. See Crawford v. State, 932 S.W.2d 672, 673-74
(Tex.App.-Houston [14th Dist.] 1996, writ ref'd) (citing California v. Hodari D., 499 U.S. 621,
627, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). Appellant's attempt to get under the vehicle
evidences a failure to yield to the officers' show of authority and, as a result, we conclude
that appellant was not seized at that time.

 When the officers used force to pull appellant from under the vehicle, appellant was
detained. However, because the officers could not ascertain appellant's purpose in
attempting to get under the vehicle, their use of force to detain appellant was reasonable
under the circumstances out of a concern for officer safety. Because there is no evidence
that appellant had been patted down to determine if he had any weapons on his person
before being handcuffed, we conclude that handcuffing appellant in these circumstances
was reasonable and did not convert the detention into an arrest. See Rhodes, 945 S.W.2d
at 117.

 Once appellant had been secured, Officer Russell returned to the vehicle appellant
had attempted to get under and discovered a Skoal can in the location appellant had been. 
Inside of the can, Russell discovered crack cocaine in multiple small bags. Voluntary
abandonment of property occurs if the defendant intended to abandon the property and his
decision to abandon the property was not the result of police misconduct. See Brimage v.
State, 918 S.W.2d 466, 507 (Tex.Crim.App. 1996) (op. on reh'g). Since appellant was not
detained prior to his abandonment of the can and as we have already determined that the
police acted properly, appellant's rights against unreasonable search and seizure were not
violated by the officers' recovery of the evidence that appellant voluntarily abandoned. See
Crawford, 932 S.W.2d at 673-74.

 Concluding that the evidence that appellant sought to have suppressed was not
obtained as a result of an illegal search or seizure, we affirm appellant's conviction for
possession of a controlled substance and overrule appellant's issues.

Conclusion

 We affirm the appellant's convictions and sentences for aggravated assault and for
possession of a controlled substance.



 Mackey K. Hancock

 Justice

 






Publish. 

1. The Court of Criminal Appeals has held that the protections from unreasonable
searches and seizures provided by the Texas Constitution are the same as the protections
provided by the United States Constitution. See Rhodes v. State, 945 S.W.2d 115, 117
(Tex.Crim.App. 1997).


"Light Grid Accent 6"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-0319-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL C

 

 FEBRUARY 4, 2011



 

 



 

 

STANLEY EUGENE HOLLINGS, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 

 



 

 FROM THE 181ST DISTRICT COURT
OF RANDALL COUNTY;

 

NO. 20,292-B; HONORABLE JOHN B. BOARD, JUDGE



 

 



 

Before QUINN, C.J., and HANCOCK and
PIRTLE, JJ.

 

 

MEMORANDUM OPINION

            Appellant, Stanley Eugene
Hollings, was convicted following a jury trial of unauthorized use of a motor
vehicle[1] enhanced and sentenced to
twenty years confinement.  In a single
issue, Appellant asserts the State's evidence was legally insufficient in
establishing that Appellant operated the same vehicle as that reported stolen.  We affirm. 
 

Background

            On January
7, 2009, a Randall County Grand Jury returned an indictment alleging that, on or
about November 5, 2008, Appellant intentionally and knowingly operated a
motor-propelled vehicle, to-wit:  a
Toyota motor vehicle, without the effective consent of its owner, Jeri
Cole.  The indictment also contained an
enhancement paragraph alleging two prior felony convictions for burglary of a
vehicle and delivery of a simulated controlled substance.

            In May 2010, a three day jury trial
was held.  The State's evidence
established that Cole would sometimes loan Appellant her car, a silver Toyota RAV4, in return for drugs.  When she came to believe Appellant was taking
advantage of her, she denied him any further use of her car.  After spending the night at Cole's house,
Appellant left the next morning with Cole's car and her cell phone.  Although Cole was later able to track
Appellant down while he was driving her car, she was unable to convince him to
return it to her.  Appellant subsequently
left Amarillo to purchase drugs in Ohio, and Cole called the police. 

            Officer Cory Jones, a Corporal with
the Amarillo Police Department, was dispatched to Cole's house to take a
complaint.  After speaking with Cole, Officer
Jones entered information describing her car into a national database[2] whereby, if an officer
anywhere in the country came across Cole's car and ran the license number, the
database would show the car was stolen.  He
also listed Appellant in the database as a suspect. 

            On November 11, 2008, Officer
Jennifer Roar of the City of Circleville, Ohio Police Department was patrolling
an area surrounding a house known as a source for narcotics and pills.  On the front porch of the house, Officer Roar
observed Dora Castillo and Rodney Evans, known narcotics abusers.  She also spotted a car parked in front of the
house with Texas license plates.  She
circled the block and, when she returned, Castillo was pulling the car out of
the parking space.  Castillo was
accompanied by Evans and two passengers. 
The car was a silver Toyota RAV4.  Officer Roar ran the license plate through
the law enforcement automated data system and their communications center.  She was advised that the Toyota RAV4 had been
reported stolen and Appellant was a suspect in the car's theft.  She executed a felony stop and arrested
Appellant.

            Cole testified that, when she
discovered her car was missing and her cell phone gone, a friend who knew
Appellant's whereabouts came and picked her up in order to help her retrieve
her car.  They subsequently observed
Appellant driving the car with a female passenger.  Both cars stopped and an argument
ensued.  When Cole's friend led her back
to his car, Appellant drove away.  When
Appellant did not return her car as she had requested, she complained to APD.  Subsequently, Cole was informed by her
insurance company that her car had been located in Circleville, Ohio.  The insurance company elected to repair
damage to the car in Ohio and later shipped the car to her in Texas.    

            Appellant testified that, after the
confrontation with Cole, he and Castillo left Amarillo, Texas, and drove to
Circleville, Ohio, to purchase drugs where Castillo had connections.  He testified Castillo assisted him with driving.  When he was arrested in Ohio, Appellant told
the officers that his girlfriend had lent the car to him.  His plan was "[t]o bring the car and the
drugs back" to Texas.  He further
testified he had permission to use Cole's car at the time of his arrest.  

            At the trial's conclusion, the jury
convicted Appellant of unauthorized use of a motor vehicle, found the
enhancements to be true, and sentenced him to twenty years confinement.  This appeal followed.

Discussion

            Appellant
asserts the State's evidence at trial was legally insufficient because the
State failed to prove that the car driven by Appellant in Ohio was Cole's car. Appellant
contends that the only evidence on
this issue was Cole's testimony that she reported a "Toyota Rav 4"
stolen and Appellant was apprehended in Ohio as a passenger in
a "silver RAV 4."  Appellant
asserts the outcome in this appeal is governed by Hooper v. State, 788 S.W.2d 24 (Tex.App.--Houston [1st Dist.] 1987,
no pet.), wherein the court held that, where the only evidence at trial was that the victim's car was a Buick Regal
and the defendant was apprehended in a Buick Regal, the State's evidence was
legally insufficient to establish that the victim was the owner of the specific
car being driven by the defendant.  Id. at 25-26.  

 

Standard of Review

            The Texas
Court of Criminal Appeals has recently held that the only standard that a
reviewing court should apply in determining whether the evidence is sufficient
to support each element of a criminal offense the State is required to prove
beyond a reasonable doubt is the standard set forth in Jackson v. Virginia, 443 U.S. 307, 33 S.Ct. 2781,
61 L.Ed.2d 560 (1979).  See Brooks v. State, 323 S.W.3d 893, 912
(Tex.Crim.App. 2010)[3]  Under
that standard, in assessing the sufficiency of the evidence to support a
criminal conviction, this Court considers all the evidence in the light most
favorable to the verdict and determines whether, based on that evidence and
reasonable inferences to be drawn therefrom, a rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt.  See
Jackson, 443 U.S. at 319; Brooks, 323 S.W.3d at 912.  We
measure the legal
sufficiency of the evidence by the elements of the offense as defined by a
hypothetically correct jury charge.  Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).  In our review, we must evaluate all of the
evidence in the record, both direct and circumstantial, whether admissible or
inadmissible.  Dewberry v. State, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999), cert.
denied, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000).




Unauthorized Use of a Motor Vehicle

            A person commits the
offense of unauthorized use of a motor vehicle when "he intentionally or
knowingly operates another's boat, airplane, or motor-propelled vehicle without
the effective consent of the owner." 
Tex. Penal Code Ann. § 31.07(a) (West 2003).  At trial, the State was required to prove,
beyond a reasonable doubt, every element of the crime with which Appellant was
charged; Winn v. State, 828 S.W.2d
284, 285 (Tex.App.--Houston [14th Dist.] 1992, no pet.) (citing
Butler v. State, 769 S.W.2d 234, 239
(Tex.Crim.App. 1989)), and an essential element of the offense of unauthorized
use of a motor vehicle is that Appellant operated a car owned by Cole.  Id.
(citing Abran v. State, 788 S.W.2d
375, 376 (Tex.App.--Houston [1st Dist.] 1988, no pet.)).

            Viewing the evidence in a light most
favorable to the verdict, Officer Cory Jones's testimony established that he
took Cole's complaint and entered information describing her car, a silver 2001
Toyota RAV4 with Texas license plate number 710 DLN, as stolen in a national
database that could be referenced by any officer in the nation if the car was
spotted.  Appellant was also entered as a
suspect in the database.

            Appellant testified that, after a
confrontation between himself and Cole, he left Amarillo, Texas, in Cole's car
and drove to Circleville, Ohio, to purchase drugs.  Officer Roar testified that she spotted
Appellant in the company of narcotics abusers in front of a known drug house in
a silver Toyota RAV4 with Texas license plates.  Officer Roar followed the car and observed
the driver, Appellant's passenger at the time of his confrontation with Cole in
Amarillo--Castillo, driving erratically. 
When Officer Roar ran the license plate number through the law enforcement
automated data system and her communications center, she was advised that the
car was stolen and Appellant was a suspect in the car's theft.  When he was arrested, Appellant testified he
told Ohio police that his girlfriend had lent him the car and his plan was
"[t]o bring the car and the drugs back" to Texas.  Subsequently, Cole was informed by
her insurance company that her car had been located in Circleville, Ohio.  The car was repaired in Ohio by her insurance
company and then shipped to her in Texas.   

            Thus, unlike Hooper where the only
evidence was that the victim's car was a Buick Regal and the defendant was
apprehended in a Buick Regal; 788 S.W.2d 25-26, here, we have evidence
that Officer Jones entered the vehicle's color, make, model, and license plate
number into a national database used by police officers to identify stolen cars
and the car was subsequently identified by that information by Officer Roar at
the time of Appellant's arrest in Ohio. 
In addition, Cole testified that, at the time of her confrontation with
Appellant in Amarillo, Appellant was driving her car without her
permission.  Appellant subsequently testified
that, following the confrontation, he and Castillo drove the car to Ohio to
purchase drugs because Castillo had connections there.  When he was arrested in Ohio, Appellant told
police that Cole had lent him the car and his plan was to bring it back to
Texas.  Lastly, Cole testified that her
insurance company informed her that her car was located in Circleville, Ohio.  Based upon this evidence, we find that a
rational trier of fact could have found sufficient evidence to establish beyond
a reasonable doubt that Appellant operated a motor vehicle, owned by Cole,
without her effective consent.  Accordingly,
Appellant's single issue is overruled. 




Conclusion

            The trial
courts judgment is affirmed.   

 

                                                                                    Patrick
A. Pirtle

                                                                                          Justice  

 

Do not publish.











[1]See Tex. Penal
Code Ann. § 31.07(a) (West 2003).





[2]Officer Jones testified Cole reported
a silver 2001 Toyota RAV4, Texas license plate number
710 DLN, as stolen.  





[3]Judge
Hervey delivered the opinion in Brooks,
joined by Judges Keller, Keasler, and Cochran; and, Judge Cochran delivered a
concurring opinion, joined by Judge Womack. 
Although we are not bound by a decision of four judges, Pearson v. State, 994 S.W.2d 176, 177
n.3 (Tex.Crim.App. 1999), we read the combined opinions of Judges Hervey and
Cochran in Brooks as abandoning
factual sufficiency as an evidentiary sufficiency standard of review distinct
from legal sufficiency.